UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT


IN RE:

    COCKELS, JENNIFER ALICE,                      Case No. 07-47634
                                                                 Chapter 7
                  Debtor.                                    Hon. Walter Shapero
_____/

JENNIFER ALICE COCKELS,

    Plaintiff,

v.                                                                               Adv. Pro. No. 07-06033

SALLIE MAE,

    Defendant.
_____/

### **OPINION REGARDING DISCHARGE OF STUDENT LOAN OBLIGATION**

      The issue before the Court involves Debtor's effort to obtain an "undue hardship" discharge of a student loan co-signor obligation pursuant to 11 U.S.C. § 523(a)(8). A trial was held on April 16, 2008. In lieu of closing arguments the parties submitted post-trial briefs.

*JURISDICTION*

      The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

*BACKGROUND*

      The plaintiff in this adversary proceeding, debtor Jennifer Alice Cockels ("Debtor"), filed her voluntary chapter 7 petition on April 18, 2007. Listed on her schedules was a student loan debt owed to Sallie Mae. Debtor is liable on this loan as a co-signor. The co-borrower on the

1

loan was Cory A. Murawski, who was Debtor's fiancé at the time the loan was obtained in June of 2004. Their relationship subsequently terminated, Murawski thereafter failed to make payments and Sallie Mae began seeking payment from Debtor.

Debtor initiated this adversary proceeding seeking to have the student loan debt determined dischargeable, and then moved for summary judgment, arguing that (1) the debt at issue was outside the coverage of § 523(a)(8) and (2) even if the debt was within the section's coverage, it should be discharged as an undue hardship. After a hearing, the Court declined to adopt Debtor's legal coverage argument, instead opting to follow the majority of cases on the issue which hold that co-signor status does not take the obligation outside of the statute. *See*, *e.g.*, *Hamblin v. Educ. Credit Mgmt. (In re Hamblin)*, 277 B.R. 676, 679 (Bankr. S.D. Miss. 2002) (collecting cases). On the issue of whether excepting this debt from discharge would cause undue hardship, the Court denied summary judgment because factual issues remained outstanding. The matter then proceeded to trial.

The student loan balance at issue is approximately $11,183.40. The repayment term is ten (10) years and the monthly payments as of the time of trial were $138.57. Debtor has two young children, a daughter age one (1) and a son age seven (7). She is employed as a registered nurse with the Children's Hospital of Michigan at the Detroit Medical Center. She works thirty-two hours per week and takes home approximately $1,464.94 in net pay every two weeks.[1] She receives monthly child support in the amount of $780.00 for her seven year-old son. She receives no support for her one year-old daughter. Murawski is the daughter's father, but he has never provided any assistance, financial or otherwise, for the care of the child. Debtor has not attempted to obtain a child support order against Murawski.

---

[1] This number is the average of the following amounts revealed from the 2008 pay stubs admitted in Plaintiff's Exhibit 5.

| Pay Date | Net Amount |
|---|---|
| 04/11/08 | $1,421.22 |
| 03/28/08 | $1,468.50 |
| 03/14/08 | $1,553.90 |
| 02/29/08 | $1,461.92 |
| 02/15/08 | $1,474.85 |
| 01/18/08 | $1,531.03 |
| 01/04/08 | $1,343.16 |

Debtor lives with her two children in a three bedroom house in Plymouth, Michigan, which she rents for $1,150.00 per month. When she originally moved into the home, Debtor had a roommate with whom she shared the rent and other expenses. That roommate has since moved out and has not been replaced.

*DISCUSSION*

Section 523(a)(8) of the Bankruptcy Code excepts student loan debts from discharge unless to do so would impose an undue hardship on the debtor and the debtor's dependants. 11 U.S.C. § 523. The Bankruptcy Code does not provide a definition of "undue hardship," leaving the courts to do so. The standard used in the Sixth Circuit is the *Brunner* test, *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir. 2005), under which, to establish "undue hardship" a debtor must make a three-part showing:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. N.Y. 1987). The debtor must make this showing by a preponderance of the evidence. *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 359 (6th Cir. 2007).

Each of the *Brunner* prongs is explored individually.

**a. Can the debtor maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loan?**

In examining whether the Debtor can maintain a minimal standard of living for herself and her two children if forced to repay the loan, the Court must determine whether she is (1) actively minimizing her living expenses and (2) maximizing her income potential. *See Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 394 (E.D. Mich. 1993). Debtor is not required to live in abject poverty, but she must make lifestyle adjustments, if necessary, to

3

minimize expenses and maximize income. *See Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 438 (6th Cir. 1998).

  *i. Expenses*

  Depending on current circumstances, there appears to be a possibility for Debtor to achieve some savings in her expenses. Debtor rents a three bedroom house for herself and her two children at the monthly rate of $1,150.00 pursuant to a lease which expires July 1, 2008. This monthly rate does not include any utilities, water or otherwise. In her testimony, Debtor acknowledged that it is possible to secure suitable housing for less than $1,150.00 per month. As of trial, Debtor had been actively looking for three bedroom houses in various communities around Detroit and found them to range in price from $900.00 to $2,000.00 per month. Accepting this range as reasonable, Debtor has the potential of reducing her rent payment possibly by $250.00 each month, or more, if the rent includes some or all of the utilities.

  Debtor also has the potential to realize significant transportation savings by relocating her residence closer to her employment. At the time of trial, Debtor expended $400.00 per month for gasoline. The size of this expense is in large part attributable to Debtor's eighty (80) mile roundtrip work commute. Other possible expense savings might be achieved from reducing the $150.00 per month spent on lunches and the $100.00 per month paid to bankruptcy counsel. Payments to bankruptcy counsel were to complete in May 2008, for instance.

  The problem insofar as expense minimization is concerned is the softness of the economy in the area of housing costs and daily living expenses, particularly transportation. The trial in this case was held on April 16, 2008. Debtor's home lease was to expire July 1, 2008. Gasoline costs have fluctuated wildly since the trial. Normal food and other everyday living costs have increased measurably. The $100.00 paid to the attorney each month has presumably now ended. Debtor may have moved closer to her place of employment at some greater or lesser cost; or she may have taken new employment closer to where she lives. If her expenses are updated, they may have materially changed in a way that would affect the Court's view of this aspect of the inquiry, one way or the other.

  *ii. Income*

4

"To satisfy this condition the debtor must demonstrate that she '. . . is making a strenuous effort to maximize her personal income within the practical limitations of her vocational profile.'" *In re Healey*, 161 B.R. at 394 (citations omitted). The Court views this requirement primarily in the context of a debtor's principal source of income from her personal employment efforts, *i.e.*, she is living up to her personal earning potential as opposed to what additional efforts she is expending to obtain monies from other sources. As to the latter, it is argued that Debtor has not, but should, seek support from Murawski for their daughter, and her failure to have done so is fatal to her claim of undue hardship here. Debtor testified that she does not know where Murawski is and does not foresee him paying any support even if he is located. To obtain funds from this source requires locating him and if he doesn't voluntarily make payments, commencing some sort of legal action (possibly in some unknown jurisdiction), or invoking some combination of administrative/legal proceeding to achieve an order requiring payment, and then go about having it enforced, etc. - all quite possibly at some expense to Debtor which her present circumstances do not permit payment of. How many of these steps is Debtor suppose to take before the requirement is satisfied? While on the basis of this record, because of her lack of trying, one cannot conclude that the effort would be futile, such futility could very easily be realized at any step of the way. More important to the Court's examination of the income maximization factor are Debtor's personal vocational prospects and efforts. The Court concludes, from the existing record, that Debtor is making reasonable efforts to maximize her income from the fruits of her personal labors, which this Court views as the primary consideration.

**b. Is the current state of affairs is likely to persist for a significant portion of the repayment period?**

The repayment period here is ten (10) years. What is a "significant" portion of that? If Debtor's inability to pay some portion will persist for two or three years from now, for example, what then? Predictability is important here, and that puts a premium on up-to-date facts on Debtor's financial situation and prospects, in light of the volatility or stability of the economy over the long run.

Debtor is employed in the healthcare field, a rapidly growing area with many attendant opportunities for a registered nurse. Debtor appears to have solid credentials, including a current position with a respected institution and a record of academic achievement in her nursing program which includes a 3.77 grade point average. Debtor is healthy and has no physical or mental handicaps. While these facts would indicate likelihood of continued earnings, outside factors beyond Debtor's control bear on the question and should be considered, whether health or economy related.

### c. Has the debtor made a good faith effort to repay the loans?

In considering whether a debtor has a made a good faith attempt at repayment, courts look to payments that the debtor has made as well as other actions the debtor has taken in regards to the loan. Good faith has been found lacking where debtors have sought to discharge loans for which they did not seek a deferment, *Brunner*, 831 F.2d at 397; or for loans which they failed to make any payments towards and failed to attempt to negotiate a payment arrangement for prior to filing bankruptcy. *In re Healey*, 161 B.R. at 397.

Debtor is making payments on, and has not sought dischargeability of, her own personal student loans. That fact, coupled with fact that she is, in effect, an accommodation endorser of the loan in question, bears on the issue of good or bad faith, notwithstanding the fact that she has not actually made any payments on this loan. Debtor testified that she did contact Sallie Mae to explore arrangements that might be made after she learned that Murawski had defaulted, though that was the extent of her efforts. This good faith effort at repayment requirement is also bound up with, and related to, her ability to have done so, or to do so, given her financial circumstances, present and anticipated. In a given situation, one could be acting in good faith without actually having made payments, and this may be one of them.

*CONCLUSION*

The sum and substance of the foregoing is that before making a final decision on the matter, the Court deems Debtor's current financial situation and circumstances to be crucial to

6

the decision, and, also whether or not, in light of such, it should also consider a partial discharge, and if so, to what extent. The passage of time and the instability of the economy and the possibility of interim changes since the trial dictate this need. Therefore, the Court requires that Debtor submit in writing to the Court within twenty (20) days, with a copy to the Defendant, a sworn statement of her present monthly income by category (gross and net together with backup documentation), together with a statement of all present continuing monthly expenditures by category, so that the Court can compare and contrast same with what was presented at the trial. Following receipt of such information, the Court will issue an appropriate decision, subject to either party requesting an additional evidentiary hearing, or the Court deeming one to be necessary.

**Signed on September 22, 2008**

                                        **/s/ Walter Shapero**
                              **Walter Shapero**
                              **United States Bankruptcy Judge**